IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FISHER-PRICE, INC.,       ) | |
|                      ) | |
|         Plaintiff,     ) | |
|                      ) | |
| v.                          ) | C.A. No.  01-051 GMS |
|                      ) | |
| SAFETY 1ST, INC.,      ) | |
|                      ) | |
|        Defendant.    ) | |

**MEMORANDUM**

**I.    INTRODUCTION**

The above-captioned action is a patent infringement suit, for which there has already been a trial, an appeal, and a remand. Presently before the court is the defendant's motion to reinstate the jury verdict (D.I. 369), as well as other various and sundry matters.

**II.   DISCUSSION**

    **A.    Motion to Reinstate the Verdict**

Plaintiff Fisher-Price, Inc. ("Fisher-Price") filed this patent infringement suit against Defendant Safety 1st, Inc. ("Safety 1st") based on the allegation that Safety 1st's "2-in-1 Bouncenette" products – which include Bouncenettes 1, 2, and 3 – and its "Magic Motion Bassinet" product, infringed several of Fisher-Price's patents. Four days before trial, on January 9, 2003, the court held a teleconference with the parties to resolve several last-minute disputes. (See D.I. 243.) Among those disputes was Fisher-Price's request to discover updated sales data from Safety 1st. (Id. ¶ 3; TC Tr. at 6:2-8.)[1] Up to that point, the calculations of Fisher-Price's damages expert, Dr. William Kerr, had been partially based on sales projections, instead of actual sales data. (TC Tr. at

---

[1] "TC Tr." refers to the transcript from the January 9 teleconference. (D.I. 246.)

8:21-9:3.) Accordingly, Fisher-Price sought the updated data in order to bring Dr. Kerr's damage calculation "current to trial." (Id. at 6:12.) Over Safety 1st's objection, the court granted Fisher-Price's request. (Id. at 11:15.) In compliance with the court's order, Safety 1st produced the updated data, in the form of a spreadsheet, on the evening of Sunday, January 12. (Tr. at 14:24-25.)[2] However, Dr. Kerr did not use the new data in his testimony to the jury because, according to Fisher-Price, the data contained inaccuracies and/or omissions, and had not been authenticated. (Tr. at 968:13-978:3.) In addition, Fisher-Price objected to the introduction of the spreadsheet during Safety 1st's cross examination of Dr. Kerr. (Id.) The objection was sustained, pending authentication. (Id.) Fisher-Price was then granted leave to depose the creator of both the spreadsheet in question, as well as another document – given to Fisher-Price shortly before the deposition – containing the source data underlying that spreadsheet. (D.I. 261, Ex. H at 9:21-10:6, 17:21-18:8.) After the deposition, and over Fisher-Price's objection, the court ruled that the spreadsheet and the source-data document were thereafter admissible. (Tr. at 1038:20-25.) Since, by that point, Fisher-Price had rested its case, Dr. Kerr was called as a rebuttal witness to testify (at considerable length) that the new data were unreliable and should not be used. (Id. at 1485:4-1497:6.) Even if the new data were to be used, Dr. Kerr added, his original lost profit calculation of roughly $5.8 million would only shrink to roughly $4.8 million. (Id. at 1496:22-1497:6.)

After two days of deliberations, the jury returned a verdict almost entirely in favor of Fisher-Price: the jury found that the Bouncenette products infringed U.S. Patent Nos. 5,947,552 ("the '552

---

[2]"Tr." refers to the trial transcript. (D.I. 285-93.)

patent"), 6,247,755 ("the '755 patent"), and Des. 431,940 ("the '940 patent" or "the design patent");[3] that the Magic Motion products infringed the '552 patent, the '755 patent, and U.S. Patent No. 6,257,659 ("the '659 patent"); and that Safety 1st infringed one or more of the claims willfully. (See D.I. 283.) As to damages, the jury determined that Fisher-Price was entitled to $1,000,000 in lost profits. (Id. at 7.) Because the design patent was also found to have been infringed, the jury calculated "the amount of profits earned by Safety 1st based on sales of [the Bouncenettes]" to be $900,000. (Id.) The final judgment was thus entered as $1,900,000. (D.I. 294.)

The court next considered numerous post-trial motions. After carefully reviewing the parties' arguments, the court concluded that the evidence did not support the jury's finding that the Bouncenette 3 infringed the '552 patent (D.I. 355 at 7-10), and consequently, that a new trial on damages was necessary:

> In the present case, a new trial on the issue of damages is clearly necessitated, as the jury's award of damages included lost profits damages for sales of Safety 1st's infringing products, including the Magic Motion and all models of the Bouncenette. The court has overturned, however, the jury's finding that the Bouncenette 3 . . . literally infringes the '552 patent. As a result, the plaintiff cannot recover damages for lost profits regarding sales of the Bouncenette 3. Because it is unclear exactly how the damages award relates to sales of each infringing product, a new trial on the issue is warranted. A new trial also will address the plaintiff's well-founded objection regarding the defendants' extremely delayed production of relevant sales data.

(Id. at 25-26.) The court also denied a motion by Safety 1st to correct the judgment, in which it was contended that an award to Fisher-Price of both $1,000,000 in lost profits and $900,000 in

---

[3]Although the jury found, "by a preponderance of the evidence, that Safety 1st's accused 2-in-1 Bouncenette products infringe the claim of the '940 design patent" (D.I. 283 at 3), the only actual infringement of that patent was by the Bouncenette 1, and by the Bouncenette 2 sold in a Bouncenette 1 box. Neither the Bouncenette 2 sold in a non-Bouncenette 1 box, nor the Bouncenette 3, infringed the '940 patent. (Tr. at 402:3-405:6.)

infringer's profits amounted to impermissible double counting. (D.I. 297, 298; D.I. 355 at 25.)

On appeal, the Federal Circuit held that the evidence did not support a finding of infringement of the '940 patent. *Fisher-Price, Inc. v. Safety 1st, Inc.*, 109 Fed. Appx. 387, 394 (Fed. Cir. 2004). At the urging of Fisher-Price, the Federal Circuit also held that it was error for this court to exclude evidence of sales of the Bouncenette 3 because, though that product did not infringe the '552 patent, it did infringe the '755 patent. Thus, the case was remanded "with instructions that the district court consider evidence of damages related to sales of the infringing Bouncenette 3." *Id.* at 397.

Safety 1st now moves the court to reinstate the $1,000,000 jury verdict for infringement of the utility patents in light of the Federal Circuit's remand instructions, which undercut the court's stated rationale for granting the previous motion for a new trial on damages. In other words, because the court erroneously held that "the plaintiff cannot recover damages for lost profits regarding sales of the Bouncenette 3," a new trial on damages is no longer necessary in Safety 1st's opinion. Fisher-Price, on the other hand, argues that a new trial is necessary to (1) address Safety 1st's "extremely delayed production of relevant sales data," (2) calculate damages associated with sales of Bouncenette 3, (3) determine Fisher-Price's lost profits for the period October 17, 2000 to December 31, 2001, and (4) calculate damages for post-trial sales. The court addresses each of Fisher-Price's arguments below.

Regarding the alleged need for a new trial to address Safety 1st's delayed production of relevant sales data, the court is not persuaded. As stated in this court's written opinion of August 28, 2003, a new trial should be granted in a jury case "only if 'the verdict was against the weight of the evidence . . . [and] a miscarriage of justice would result if the verdict were to stand.'"

4

(D.I. 355 at 5 (quoting *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991)).) By mentioning that "[a] new trial also will address the plaintiff's well-founded objection regarding the defendants' extremely delayed production of relevant sales data," the court was not stating an independent basis for such a trial. Instead, the court was merely explaining that the need to address Fisher-Price's discovery complaint was obviated by the new trial. Indeed, after a comprehensive review of nearly two thousand pages of pre-trial and trial transcript, the court is convinced that the verdict was not against the weight of the evidence, and that a miscarriage of justice would not result by allowing the verdict to stand. Although the $1 million in lost profits awarded by the jury is considerably less than the $5.8 million in lost profits calculated by Dr. Kerr, it is still several times greater than the $287,000 in reasonable royalties calculated by Safety 1st's damages expert, Creighton Hoffman (Tr. at 1130:1-17). Thus, in accordance with Jury Instruction 5.1 (D.I. 277 at 41) and 35 U.S.C.A. § 284 (2001), Fisher-Price was awarded an amount greater than "a reasonable royalty for the use made of the invention by the infringer." Moreover, Dr. Kerr was afforded ample opportunity – over twelve pages of trial transcript – to explain to the jury his reasons for believing the updated sales data were unreliable. The fact that he was apparently unable to convince the jury that either of his lost profit calculations – $4.8 million or $5.8 million – was correct is not a basis for holding a new trial on damages.

As to Fisher-Price's second asserted reason that a new trial on damages is warranted, the court disagrees. The court was admittedly mistaken when it granted a new trial on the basis of its post-trial ruling that the Bouncenette 3 did not infringe the '552 patent. The correct ruling would have been to deny a new trial because the lost profits awarded to Fisher-Price based on the Bouncenette 3 were warranted due to the jury's finding that all three Bouncenette products infringed

the '755 patent. In fact, at a recent hearing, the court was led to believe that Fisher-Price agreed:

> So with respect to the issue of the new trial and the grounds for new trial and why we need a new trial, there exists still three. *The '552 issue, obviously, is not a ground any longer.* But we still need to deal with the '940 issue. We still need to deal with the discovery abuse issue . . . . We now need to deal with the post-verdict sales for approximately a year in very significant amounts.

(D.I. 395 at 13:8-16 (emphasis added).) Without explanation, and in complete contradiction to the above statements of counsel, Fisher-Price now attempts to resurrect an argument that has already had a wake, funeral, and burial. Suffice it to say, the court is content to let its previous error rest in peace.

Fisher-Price's third argument, if not yet six feet under, is certainly moribund. At trial, it was established that infringement of the utility patents, by either the Bouncenettes or the Magic Motion, began on February 1, 2000, and continued through December 31, 2002.[4] However, infringement of the '940 design patent, by either the Bouncenette 1 or the Bouncenette 2 sold in a Bouncenette 1 box, began on October 17, 2000, and ended on December 31, 2001.[5] With that time line in mind, Fisher-Price contends that the jury's damage award consisted of two components. First, $900,000 in Safety 1st's profits (infringer's profits) for infringement of the '940 patent by the Bouncenette 1 (and the Bouncenette 2 sold in the Bouncenette 1 box) during the period spanning October 17, 2000

---

[4]Damages for 2003 and beyond are addressed below.

[5]As mentioned above, the Bouncenette 2, which itself did not infringe the '940 patent, was originally sold in the Bouncenette 1 box, *see supra* note 3, an act this court previously held to be an infringement of the design patent (D.I. 355 at 18-21). Fisher-Price points out that although December 31, 2001, is the last known date of Bouncenette 1 sales, sales of the Bouncenette 2 in the Bouncenette 1 box may have continued beyond that date. If so, infringement of the '940 patent would have continued into 2002 as well. (D.I. 396 at 5 n.3.) It is not necessary to resolve that evidentiary ambiguity at this juncture, so the court assumes for the sake of simplicity that infringement of the '940 patent ended on December 31, 2001.

to December 31, 2001. Second, $1,000,000 in Fisher-Price's total lost profits attributable to infringement of the three utility patents by the Bouncenettes and the Magic Motion during the period spanning February 1, 2000 to December 31, 2002, *minus* Fisher-Price's lost profits attributable to the sale of the Bouncenette 1 (and the Bouncenette 2 sold in the Bouncenette 1 box) during the period spanning October 17, 2000 to December 31, 2001. The "minus" allegedly arose because the jury was instructed that "for the '940 patent only, Fisher-Price may not recover both the profits of Safety 1st and an additional damage remedy from Safety 1st, such as lost profits or a reasonable royalty." (Tr. at 1700:7-11.) Now that the Federal Circuit has vacated the jury's finding of infringement regarding the '940 patent, *Fisher-Price*, 109 Fed. Appx. at 394, and bolstered by this court's prior holding that the $1,900,000 verdict did not amount to a double recovery (D.I. 355 at 25), Fisher-Price argues that the "minus" from its total lost profits must be undone with a new trial on damages.

In spite of its ostensible reasonableness, Fisher-Price's argument is plagued with problems. First and foremost, no testimony was adduced from either Dr. Kerr or Mr. Hoffman to support this sort of calculation by the jury. To the contrary, Dr. Kerr explained that his lost profits calculation was based on "Unit Sales of Portable Bassinets and Bouncers" by Safety 1st in 2000 and 2001 – actual sales reported by Safety 1st that otherwise would have been made by Fisher-Price. (PX173; PX175; PX176; Tr. at 882:16-897:17.) Likewise, Mr. Hoffman explained that his reasonable royalty calculation was also based on actual unit sales reported by Safety 1st for 2000 and 2001. (Tr. at 1108:14-17.) Neither expert suggested that a double recovery needed to be avoided by reducing damages for that period to account for Safety 1st's infringement of the design patent.

Second, Fisher-Price's argument requires a strained reading of the questions and answers on

7

the verdict form. In response to Question 20, which read, "If you found that Fisher-Price is entitled to Lost Profits damages indicate the amount to which Fisher-Price is entitled, otherwise proceed to Question 21," the jury answered "$1,000,000." (D.I. 283 at 7.) In response to Question 22, which read, "If you found that Safety 1st has infringed the '940 patent, state the amount of profits earned by Safety 1st based on sales of the infringing product," the jury answered "$900,000." (Id.) These questions are not even remotely suggestive of the complex calculation Fisher-Price believes took place. Rather, a natural reading of the questions reveals the jury's belief that Fisher-Price lost $1,000,000 overall as a result of Safety 1st's infringement, and separately, that Safety 1st made $900,000 by selling products that infringed the '940 patent.

Third, the argument is inconsistent with Fisher-Price's previous arguments. During the parties' discussions with the court regarding the wording of the jury instructions, Fisher-Price objected to the final sentence in the instruction on damages for design patents, which read:

> As I indicated earlier, the '940 patent is a design patent. In determining damages for infringement of this design patent, Fisher-Price may be awarded the profits made by defendants through sales of the products accused of infringing the design patent. *If Fisher-Price recovers defendants' profits, it may not also be awarded other damages for the sales of those products.*

(D.I. 219 at 98 (emphasis added).) Counsel for Fisher-Price orally elaborated to the court the basis for the objection:

> Your Honor, we think the following last sentence should come out, for the following reason. There is no dispute as a matter of law that the defendant [sic] can't double-recover profits. If we recover our profits, we can't recover their profits. *So if, for example, they give us profits at the top, in response to 20, and give us profits on the bottom, we can't get both.* Your Honor deals with that in entering the verdict.
>
> It only becomes an issue if there is a reasonable royalty that is an amount less than their profits.
>
> And the jury would know that, too, because they would say that in response

> to the reasonable-royalty question.  If that happens, you need to know what that profit figure is.  That is all we ask, just what the figure is.  Just how much is it, *not asking them to award anything.*  Then your Honor in post-verdict entry of judgment can determine from this that there is no double-recovery.  That is the right amount.
> . . .
> Yes.  That should come out because the Court can address that.  With that language in there, they might make the deduction in the jury room.

(Tr. at 1645:2-1646:10 (emphasis added).)  The court agreed, and thus the sentence was removed with the specific purpose of preventing the jury from attempting to calculate a reduced lost profits award.[6]  Furthermore, in closing, plaintiff's counsel carefully explained to the jury the proper way to interpret the damage questions on the verdict form.

> Dr. Kerr also testified . . . about . . . lost infringement [profits] in the design patent.
>
> This is a special aspect of this case, as the Judge instructed you in the instructions, because one of the patents, as you will recall, is a design patent . . . .
>
> Fisher-Price, under the jury instructions and the law, is entitled to collect its own lost profits for infringing [sic] the utility patents, these first three.  *For that calculation, they are infringing the '552, the '659 and the '755, and both products infringe them, by the way.  We get to collect our lost profits.*
>
> We also have a right, however, on the design patent, because of a special provision in the law, for a provision in the design patent, there are options on which [sic] your recovery is going to be.  So in this case, when you see your verdict form, you are going to be asked for a calculation of what the Safety 1st profits are for

---

[6]The final sentence was then replaced with a different sentence proposed by Safety 1st:

> As I indicated earlier, the '940 patent is a design patent.  In determining damages for infringement of this design patent, Fisher-Price may be awarded the profits made by defendants through sales of the products accused of infringing the design patent. *However, for the '940 patent only, Fisher-Price may not recover both the profits of Safety 1st and an additional damage remedy from Safety 1st, such as lost profits or a reasonable royalty.*

(D.I. 277 at 49 (emphasis added).)  Fisher-Price acquiesced to the proposal, and therefore waived any objection it may have had.

9

> infringing the design patent, just the design patent.
>
> So there will be a special line for that. So I asked Dr. Kerr to make that calculation for you. *It doesn't necessarily mean we get it. The Judge takes care of that. But you are being asked to calculate it for the Judge and he will make a determination whether we get anything.*

(Tr. at 1769:7-1770:8 (emphasis added).) Yet, in spite of counsel's earlier arguments and in spite of the clarity of his closing statement, the court is now asked to infer that the jury acted on its own and reduced Fisher-Price's lost profits to avoid the double-recovery problem. Clearly, that is something the court cannot do. Accordingly, the court rejects the notion that a new trial is necessary to determine Fisher-Price's lost profits for the period October 17, 2000 to December 31, 2001. Moreover, the court reverses its previous denial of Safety 1st's motion to correct the judgment, and holds that judgment should have been entered in the amount of $1,000,000.

As to Fisher-Price's contention that a new trial is necessary to calculate damages for post-trial sales, the court agrees. A mere accounting for such sales will clearly not suffice because the calculation of damages, whether in the form of lost profits or a reasonable royalty, is fraught with disputed issues of material fact that must be resolved by either a jury or the court.[7] However, the trial will be limited in scope to damages arising in 2003 and thereafter. In light of the court's decision, Safety 1st's motion to reinstate the verdict will be denied. For the sake of clarity, the court's denial of this motion does *not* mean the jury's award of $1,000,000 for the period 2000-2002 will be disturbed. It merely means the court will enter a judgment amount equal to $1,000,000 plus any damages awarded by the factfinder at the new trial.

---

[7]Assuming *arguendo* that there is a right to a jury trial for the damages phase, and without indicating a preference either way, the court advises the parties that a bench trial could be scheduled sooner than a jury trial.

**B.     Willfulness**

At trial, Fisher-Price argued extensively to the jury that Safety 1st willfully infringed the '552 patent, the '755 patent, the '659 patent, and the '940 patent. (Tr. at 1731:13-1749:18.) However, the willfulness question posed to the jury was not specific to any one of those patents: "Do you find that Fisher-Price has shown by clear and convincing evidence that Safety 1st has infringed one or more of the claims willfully?" (D.I. 283 at 4.) Therefore, although the jury answered that question in the affirmative, the court is unable to discern whether or not the jury's conclusion was limited to a mere subset of those patents. Consequently, in light of the Federal Circuit's determination that Safety 1st did not infringe the '940 patent, the willfulness verdict cannot stand. Thus, the new trial on damages will be expanded to include a new trial on willfulness as well.

**III.   CONCLUSION**

For the aforementioned reasons, Safety 1st's motion to reinstate the jury verdict will be denied, and the request for a new trial on damages and willfulness will be granted.

Dated: March 29, 2006                                            /s/ Gregory M. Sleet
                                                                 UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FISHER-PRICE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.  01-051 GMS |
| | ) | |
| SAFETY 1ST, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

IT IS HEREBY ORDERED THAT:

1. The Defendant's motion to reinstate the verdict (D.I. 369) be DENIED; and

2. A new trial on damages and willfulness be SCHEDULED.


Dated: March 29, 2006                                        /s/ Gregory M. Sleet
                                                                                  UNITED STATES DISTRICT JUDGE