IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FISHER-PRICE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.  01-051 GMS |
| | ) | |
| SAFETY 1ST, INC., DOREL JUVENILE | ) | |
| GROUP, INC., AND DOREL DESIGN | ) | |
| AND DEVELOPMENT, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM**

**I.    INTRODUCTION**

Fisher-Price, Inc. ("Fisher-Price") brought this patent infringement action against Safety 1st, Inc., Dorel Juvenile Group, Inc., and Dorel Design and Development, LLC (collectively, "Safety 1st" or the "defendants").  Fisher-Price alleged that Safety 1st's "2-n-1 Bouncenette" products, including Bouncenettes 1, 2, and 3, and Safety 1st's "Magic Motion Bassinet" product infringed various Fisher-Price patents.[1]  The patents-in-suit relate generally to infant carriers and bassinets.  After trial, appeal, and remand, the court granted Fisher-Price's motion for a new trial on damages arising during 2003 and thereafter and on willfulness.  At the second trial, the jury awarded Fisher-Price $1,321,000 in post-2002 damages and found Safety 1st's infringement to be willful.  (D.I. 505.)

Now before the court are various motions: the plaintiff's motion for a finding of contempt (D.I. 445), the defendant's motions for judgment as a matter of law as to damages (D.I. 512) and as to willfulness (D.I. 511), and the plaintiff's motions for entry of final judgment, enhanced

---

[1] The Fisher-Price patents at issue include U.S. Patent Nos. 5,660,435 (the "'435 patent"), 5,947,552 (the "'552 patent"), 6,247,755 (the "'755 patent"), 6,257,659 (the "'659 patent"), and Des. 431,940 (the "D'940 patent" or the "design patent").

damages, attorneys' fees, and prejudgment interest (D.I. 515). The defendant has also moved for leave to file additional briefing as to willfulness. (D.I. 551.) The court will grant Fisher-Price's motions in part and deny Safety 1st's motions for the reasons that follow.

## II. BACKGROUND

On January 26, 2001, Fisher-Price filed this patent infringement action, alleging that Safety 1st's Magic Motion and Bouncenette products had infringed the '435 patent, the '552 patent, and the D'940 patent. Fisher-Price subsequently added the '755 patent and the '659 patent to its claims after those patents were issued. The court granted summary judgment to Safety 1st as to non-infringement of the '435 patent. (D.I. 208.) Trial on the remaining claims commenced on January 13, 2003. At the conclusion of trial, the jury found infringement and willfulness with respect to one or more of Fisher-Price's asserted claims. (D.I. 283.)

On August 28, 2003, on Fisher-Price's motion, the court entered a permanent injunction (the "Injunction") prohibiting Safety 1st from "making, using, offering for sale, selling, licensing, importing, or otherwise distributing in the United States the following products: (a) the '2-n-1' Bouncenette, including model numbers 43002, 43002A, 43006, 43006A, 25006, and 25105; and (b) the Magic Motion, model number 43003." (D.I. 354.) The Injunction also required Safety 1st to "make every reasonable effort possible to retrieve from their major retail customers infringing products including the above-listed specifically identified products that are still in the possession of those customers." *Id.*

Safety 1st appealed the judgment and the Injunction, and Fisher-Price cross-appealed this court's exclusion of certain evidence relating to damages for infringement of the '755 patent. The Federal Circuit reversed the jury's finding of infringement as to the D'940 patent. The

Federal Circuit also held that it was error for this court to exclude evidence of damages relating to Bouncenette 3, and directed this court to consider such evidence. *Fisher-Price, Inc. v. Safety 1st, Inc.*, 109 Fed. Appx. 387 (Fed. Cir. 2004). On remand, this court granted Fisher-Price's motion for a second trial on damages arising in 2003 and thereafter and on willfulness. (D.I. 399.) On November 11, 2006, Fisher-Price moved for a finding that Safety 1st was in contempt of the Injunction. (D.I. 445.) The court deferred ruling on the contempt motion until after the second trial, thereby providing both parties the opportunity to present evidence and argue the factual basis, or lack thereof, of the motion. (D.I. 492.) The second trial commenced December 4, 2006, and the jury rendered a verdict awarding Fisher-Price $1,321,000 in post-2002 damages and finding that Safety 1st's infringement was willful. (D.I. 505.) Safety 1st and Fisher-Price then filed the various post-trial motions now before the court.

### III. STANDARD OF REVIEW

#### A. Contempt of Court

To prove civil contempt, the moving party must show by clear and convincing evidence that "(1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order." *Harris v. City of Philadelphia*, 47 F.3d 1311, 1326 (3d Cir. 1995); *see Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994) (internal citations omitted); *United States v. Pozgai*, 999 F.2d 719, 735 (3d Cir. 1993).

#### B. Renewed Motion for Judgment as a Matter of Law

Pursuant to Rule 50 of the Federal Rules of Civil Procedure, a court may render judgment as a matter of law after the moving party is fully heard on an issue at trial if there is no legally sufficient evidentiary basis for a reasonable jury to find for the party opposing the motion on that

issue. *Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1238 (3d Cir. 1993) (internal citation omitted). If the court denies a motion for judgment as a matter of law during trial, the motion may be renewed within ten days of entry of judgment in the case. Fed. R. Civ. P. 50(b). For a party to prevail on its renewed motion for judgment as a matter of law following a jury trial, the party "'must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings.'" *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (quoting *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984)). "'Substantial' evidence is such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp.*, 732 F.2d. at 893. In assessing the sufficiency of the evidence, the court must draw all reasonable inferences from the evidence in the light most favorable to the nonmovant. *Id.*; *Richardson-Vicks Inc. v. UpJohn Co.*, 122 F.3d 1476, 1479 (Fed. Cir. 1997). The appropriate inquiry is whether a reasonable jury, given the facts before it, could have arrived at the conclusion it did. *Dawn Equip. Co. v. Kentucky Farms, Inc.*, 140 F.3d 1009, 1014 (Fed. Cir. 1998). The court may not determine the credibility of the witnesses nor "substitute its choice for that of the jury between conflicting elements of the evidence." *Perkin-Elmer Corp.*, 732 F.2d at 893.

    **C.**    **Motion for a New Trial**

The court may grant a new trial pursuant to Federal Rule of Civil Procedure 59 "for any of the reasons for which new trials have heretofore been granted in actions of law in the courts of the United States." Fed. R. Civ. P. 59(a). In making this determination, the trial judge should

consider the overall setting of the trial, the character of the evidence, and the complexity or simplicity of the legal principles which the jury had to apply to the facts. *Lind v. Schenley Industries, Inc.*, 278 F.2d 79, 89 (3d Cir. 1960), *cert. denied*, 364 U.S. 835 (1960). A court should grant a new trial in a jury case, however, only if "the verdict was against the weight of the evidence . . . [and] a miscarriage of justice would result if the verdict were to stand." *Williamson v. CONRAIL* 926 F.2d 1344, 1352 (3d Cir. 1991).

## IV. DISCUSSION

### A. Fisher-Price's Motion for a Finding of Contempt

Fisher-Price argues that Safety 1st should be found in contempt of the Injunction of August 28, 2003. (D.I. 445.) To prove civil contempt, Fisher-Price must establish that (1) the Injunction was a valid court order, (2) Safety 1st had knowledge of the Injunction, and (3) Safety 1st disobeyed the Injunction. *Harris v. City of Philadelphia*, 47 F.3d 1311, 1326 (3d Cir. 1995). This showing must be established by clear and convincing evidence. *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994) (internal citations omitted); *United States v. Pozgai*, 999 F.2d 719, 735 (3d Cir. 1993). There is no dispute as to the Injunction's validity or to Safety 1st's knowledge of it. Thus, the sole issue is whether Safety 1st violated the Injunction.

Fisher-Price argues that Safety 1st violated the Injunction in two ways. First, Fisher-Price contends that Safety 1st violated the Injunction by continuing to sell infringing models of the 2-n-1 Bouncenette and the Magic Motion after August 28, 2003. With respect to Magic Motion sales, Safety 1st has admitted to selling at least 442 units of the Magic Motion after the Injunction was entered. Safety 1st attempts to minimize its contemptuous conduct by portraying it as inadvertent or insignificant. The fact remains, however, that Safety 1st violated a valid court

5

order. Thus, the court finds that Safety is in contempt of the Injunction with respect to Magic Motion sales.

With respect to Bouncenette sales, Fisher-Price asserts that Safety 1st has failed to show that its post-Injunction Bouncenette sales were not in violation of the Injunction. Safety 1st counters that, while it sold Bouncenettes after the Injunction's entry bearing the proscribed base model numbers, all of those Bouncenettes had a new, non-infringing harness design that Fisher-Price has not accused of infringement. Safety 1st explains that it appended a revision letter to the base model numbers, rather than change the base model numbers themselves, to indicate Bouncenettes with the redesigned harness: 43002B became 43002C rather than, hypothetically, 43003. The problem is that certain of Safety 1st's sales records did not reflect the change in revision letter. This ambiguity in Safety 1st's recordkeeping appears careless in the face of the Injunction.[2] Despite Safety 1st's less-than-ideal recordkeeping, however, Fisher-Price's evidence of actual contemptuous Bouncenette sales falls short of the requisite standard. The court finds that Fisher-Price has not established, by clear and convincing evidence, that Safety 1st violated the Injunction with respect to Bouncenette sales.

Second, Fisher-Price argues that Safety 1st violated the Injunction by failing to make all reasonable efforts to retrieve infringing products from Safety 1st's major retail customers. The court agrees. Safety 1st hired another company to retrieve infringing products from Toys 'R Us and Babies 'R Us. That was a reasonable effort. But Safety 1st admits that it did not make similar efforts with its other major retail customers, such as Target. The court's order was unambiguous: Safety 1st was required to "make every reasonable effort possible." Safety 1st did

---

[2] During cross-examination of Joseph Mabardy ("Marbardy"), Safety 1st's director of sales, Fisher-Price pointed out that Safety 1st could have eliminated all confusion simply by changing the entire model number to reflect the new design. In this way, Safety 1st's computer records would have clearly shown which models infringed, and which did not.

not. Considering the inconsistent and delayed retrieval efforts to which Safety 1st has admitted during depositions and at trial, the court finds that Safety 1st is in contempt of the Injunction with respect to its efforts to retrieve infringing products from major retail customers.

On the issue of remedies, Fisher-Price seeks its lost profits that resulted from Safety 1st's violations of the Injunction, as well as attorneys' fees and enhanced damages. As such, in determining a remedy, the court weighs what is required to compensate Fisher-Price for the contemptuous conduct. *Cf. Harris*, 47 F.3d at 1328-29 (discussing purposes of civil contempt sanctions); *McDowell v. Philadelphia Hous. Auth.*, 423 F.3d 233, 240 (3d Cir. 2005) ("The sanction imposed on a civil contemnor for his past conduct may not exceed the actual damages caused by his violation of the court's order."); *GE Harris Ry. Elecs., L.L.C. v. Westinghouse Air Brake Co.*, 2004 U.S. Dist. LEXIS 16329, at *19-20, 32-35 (D. Del. August 18, 2004). Accordingly, Fisher-Price is entitled to recover its profits lost due to contemptuous Magic Motion sales and sales of infringing products not reasonably retrieved from Safety 1st's major vendors, such as Target and Wal-Mart. At the second trial, however, the jury included these lost profits in its damages award. As discussed herein, the court will not disturb this award. Thus, the court will not include the lost profits awarded to Fisher-Price by the jury in the court's contempt sanction. Doing so would result in a sanction exceeding what is necessary to compensate Fisher-Price for its actual damages caused by Safety 1st's contemptuous conduct. But the court does award Fisher-Price its actual, reasonable attorneys' fees and costs incurred in the prosecution of the contempt motion so as to make Fisher-Price whole.[3] *Cf. GE Harris Ry. Elecs.*, 2004 U.S. Dist. LEXIS 16329, at *32-35. The court declines, however, to award Fisher-

---

[3] The court directs Fisher-Price to establish its reasonable attorneys' fees and costs incurred in the prosecution of the contempt motion, (D.I. 455), in a subsequent filing within 20 days after the receipt of this Memorandum. Safety 1st may file pertinent objections within 20 days after receipt of Fisher-Price's submission of its fees and costs.

Price the enhanced damages or additional sanctions that it has requested, as such an award is beyond the scope of available remedies for civil contempt. *McDowell*, 423 F.3d at 240.

### B. Safety 1st's Renewed Motion for JMOL On Damages

Safety 1st advances four arguments against the jury's post-2002 damages award, which was based on a determination that Safety 1st had made $3,071,284 in infringing sales. First, Safety 1st argues that it introduced evidence supporting a finding of only $1,566,030 in infringing sales, thus undermining the basis of the jury's award. But the jury clearly found Mabardy, Safety 1st's witness on this issue, incredible. Besides Mabardy's testimony and documents that he discussed, other evidence admitted at trial showed sales of products bearing infringing base model numbers, in the amount inferred by the jury. Specifically, the jury reviewed Safety 1st's records indicating sales of models with infringing model numbers. As discussed above in the context of the contempt motion, in these records Safety 1st failed to distinguish between infringing and non-infringing, redesigned products bearing the same model number but different revision letters. After being instructed without objection by Safety 1st that it could hold ambiguities against the infringer, the jury concluded, based on these records, that all of Safety 1st's sales were infringing. Because the jury's conclusion as to total infringing sales was based upon substantial evidence, as well as its determination of the credibility of certain witnesses, the court will deny Safety 1st's arguments as to the correct amount of sales that should be deemed to be infringing.

Second, Safety 1st argues that the court should preclude the lost-profits award because Safety 1st's redesigned, non-infringing Bouncenette was an available, acceptable non-infringing alternative to the Fisher-Price invention during the time in question. Safety 1st cites to *Grain*

8

*Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1353-55 (Fed. Cir. 1999), in support. But in that case, the Federal Circuit upheld the district court's preclusion of a lost-profits award in part because the Federal Circuit found no clear error in the district court's findings of fact. Specifically, the Federal Circuit found no error in the trial court's finding that a non-infringing product was "available" at the time, even if the product was not openly on sale. *Id.* at 1350-56. Here, the jury was instructed regarding availability, and rejected Safety 1st's assertions with respect to its redesigned non-infringing products. This is clear enough from the jury's damage award, which, as discussed above, rejected Safety 1st's account of the redesign process and schedule in concluding that all Bouncenette sales were infringing. Thus, the jury did not find that Safety 1st effected the change during this time, despite all of Safety 1st's efforts to do so. Safety 1st may have had the know-how to sketch a new harness system, but it did not establish that it had the know-how to implement the change. *Cf. Grain Processing Corp.*, 185 F.3d at 1346 (infringer needed only two weeks, from first efforts to final production, to implement change). The jury rejected Safety 1st's account to the contrary. As such, the court concludes that Safety 1st did not provide proper economic proof at trial of availability to preclude the jury's award of lost profits.

Third, Safety 1st argues that issue preclusion bars Fisher-Price from claiming any more than 7.366% of Safety 1st's total sales in damages. "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA Inc.*, 458 F.3d 244, 249 (quoting the Restatement (Second) of Judgments § 27) (internal quotations omitted).

Safety 1st infers this maximum percentage from the verdict of the first trial, where the jury awarded Fisher-Price lost profits of $1,000,000 due to Safety 1st's infringement of the '755 patent. That jury did not, however, determine Fisher-Price's profit margin or the sales base from which the jury had calculated damages. Moreover, as this court previously found, the issue of damages arising in 2003 and thereafter involved disputed material facts warranting a second trial on damages. In sum, it is not clear that the jury actually determined, in January 2003, that Fisher-Price's profit margin on sales occurring in 2003 and thereafter was 7.366%. Thus, the court finds that issue preclusion does not apply with respect to Fisher-Price's profit margin to limit the jury's lost-profits award in the second trial.

Finally, Safety 1st requests the court to reduce the damages award to no more than an amount that the evidence showed would be an appropriate measure of damages based on infringing sales of $1,566,030. For the reasons discussed above, particularly the jury's findings of fact based on its instructions, the court declines to do so. Based on the foregoing, the court will deny Safety 1st's motion for judgment as a matter of law as to damages.

### C.     Safety 1st's Renewed Motion for JMOL On Willfulness

The Federal Circuit set forth the current standard for willfulness in *In re Seagate Tech., LLC*: "proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness." *In re Seagate Technologies, LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). Under this standard, "to establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.* In addition, "the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement

10


proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id.*

*Seagate* was decided after trial in this case, but before the entry of final judgment. Safety 1st and Fisher-Price have both filed positions with respect to this post-trial change in case law. Because the court finds below that enhanced damages and an award of attorneys' fees are inappropriate in this case, however, the court need not address the issue of willfulness in light of *Seagate*. Safety 1st's motion is therefore denied as moot.

### D. Safety 1st's Motions for New Trials on Damages and Willfulness

The court has concluded that the jury's damages award was supported by substantial evidence. In light of this conclusion, and after careful consideration of the parties' arguments, the court finds that Safety 1st has not demonstrated that the evidence supporting its case is so clear that permitting the jury's award to stand would result in a miscarriage of justice. The court will therefore deny Safety 1st's motion for a new trial on damages. In addition, for reasons discussed above, the court will deny Safety 1st's motion for a new trial on willfulness.

### E. Fisher-Price's Motions for Entry of Final Judgment, Attorneys' Fees, and Prejudgment Interest

Fisher-Price asks that the court enter final judgment in its favor, pursuant to Rule 58(a) of the Federal Rules of Civil Procedure. (D.I. 515.) As stated above, the court will deny Safety 1st's motions for judgment as a matter of law as to damages and as to willfulness. Accordingly, the court will grant Fisher-Price's motion for entry of final judgment.

Fisher-Price also requests that the court award it enhanced damages and attorneys' fees and prejudgment interest. (D.I. 551.) Pursuant to 35 U.S.C. § 384, a court may, in its discretion, increase the damages award up to three times the original amount found. The Federal Circuit has

held that an increased award requires a showing of willfulness. *In re Seagate Technologies, LLC*, 497 F.3d at 1368. The jury found that Safety 1st's infringement was willful, and the court declines to grant Safety 1st judgment as a matter of law contrary to the jury's finding. Nonetheless, considering all the facts and circumstances of this case, including the closeness of many of the issues as well as Safety 1st's redesign efforts, the court finds that this is not a case where enhanced damages are appropriate.[4] Safety 1st relied on substantial defenses, both at trial and on appeal, which overcame nearly all of Fisher-Price's claims. Furthermore, Safety 1st engaged in efforts to redesign its Bouncenette product after the first infringement verdict. Thus, the court will deny Fisher-Price's motion for enhanced damages.

In exceptional cases, the court may also award reasonable attorneys' fees. 35 U.S.C. § 285. Cases of willful infringement often qualify for such fee awards. Here, Fisher-Price argues that the court should award it attorneys' fees because this is such a case. For reasons similar to those underlying the court's decision not to award enhanced damages, and despite the contentiousness and duration of this dispute, the court finds that this is not an exceptional case warranting an award of attorneys' fees. As such, Fisher-Price's motion for an award of attorneys' fees and costs will be denied.

Unlike awards of attorneys' fees, awards of prejudgment interest are the norm. *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996). Indeed, Safety 1st does not dispute that Fisher-Price is entitled to prejudgment interest as to lost profits. Instead, the

---

[4] The Federal Circuit has identified several factors for consideration when deciding the extent to which a court will enhance damages pursuant to 35 U.S.C. §384: (1) evidence as to whether the infringer deliberately copied the ideas or designs of the patentee; (2) evidence that the infringer knew of the other's patent, investigated the scope of the patent, and formed a good-faith belief that it was invalid or that it was not infringed; (3) evidence of the infringer's behavior as a party to the litigation; (4) evidence of the infringer's size and financial condition; (5) evidence as to the closeness of the case; (6) evidence regarding the duration of the infringer's conduct; (7) evidence showing remedial action taken by the defendant; (8) evidence regarding the defendant's motivation for harm; and (9) evidence as to whether the defendant attempted to conceal its misconduct. *See Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992) (internal citations omitted).

parties dispute which interest rate should apply. Safety 1st argues that that appropriate rate is the 1-year Treasury bill rate, the same rate that applies to post-judgment interest by statute. *See* 28 U.S.C. § 1961. Fisher-Price contends that the court should apply the U.S. bank prime interest rate because that rate better compensates Fisher-Price for the loss of use of money from when the claim accrued until the entry of judgment. *See Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347-48 (Fed. Cir. 1999). This is so, Fisher-Price argues, because the prime rate more closely reflects the actual cost of capital to Fisher-Price. While the court finds this position to be reasonable, the court also notes – as Safety 1st argues – that Fisher-Price has previously argued for the 10-year Treasury bill rate. Fisher-Price does not contest that it is only since the second trial that it has argued for the prime rate. Indeed, Fisher-Price's expert witness recommended the 10-year Treasury bill rate as late as October 16, 2006. Nonetheless, based on Fisher-Price's showing after trial, the court in its discretion finds the prime rate best serves the compensatory purpose of an award of prejudgment interest because it better reflects the time value of money Fisher-Price lost due to Safety 1st's infringement. Thus, the court awards Fisher-Price prejudgment interest, calculated at the prime rate, of $3,054,114 as of January 12, 2007, plus $690.31 (daily interest) times 479 (days since Jan 12, 2007), for a total of $3,384,772.49.

### F.     Safety 1st's Motion for Leave to File Additional Briefing

Safety 1st has requested leave to file supplemental briefing regarding willfulness in light of *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007). (D.I. 551.) Based on its discussion and findings above, the court finds that no such briefing is necessary. As such, the court will deny this motion.

## V.     CONCLUSION

For the aforementioned reasons, the court will grant in part Fisher-Price's motions and deny Safety 1st's motions.

Dated: May 5, 2008                               /s/ Gregory M. Sleet
                                                 CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FISHER-PRICE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 01-051 GMS |
| | ) | |
| SAFETY 1ST, INC., DOREL JUVENILE | ) | |
| GROUP, INC., AND DOREL DESIGN | ) | |
| AND DEVELOPMENT, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

### **ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. The plaintiff's Motion for Contempt of Court (D.I. 445) is GRANTED IN PART and DENIED IN PART;

2. The defendants' Renewed Motion for Judgment as a Matter of Law or a New Trial as to Willfulness (D.I. 511) is DENIED;

3. The defendants' Renewed Motion for Judgment as a Matter of Law or a New Trial as to Damages (D.I. 512) is DENIED;

4. The plaintiff's Combined Post-Trial Motions for Entry of Final Judgment, Enhanced Damages, Attorneys' Fees, and Prejudgment Interest (D.I. 515) are GRANTED IN PART and DENIED IN PART; and

5. Final judgment is entered in favor of Fisher-Price and against Safety 1st in the following two amounts:

    a. $2,321,000 in damages (specifically, $1,000,000 in pre-2003 damages (D.I. 294) and $1,321,000 in damages arising during 2003 and thereafter (D.I. 509); and

    b. $3,384,772.49 in prejudgment interest.

Dated: May 5, 2008                        /s/ Gregory M. Sleet  
                                               CHIEF, UNITED STATES DISTRICT JUDGE